| | |
|---|---|
| DELBELLO DONNELLAN WEINGARTEN<br>WISE & WIEDERKEHR, LLP<br>*Attorneys for the Debtor*<br>One North Lexington Avenue<br>White Plains, New York 10601<br>(914) 681-0200<br>Jonathan S. Pasternak, Esq.<br>Julie Cvek Curley, Esq. | *Hearing Date: July 8, 2015*<br>*Hearing Time: 10:00 a.m.* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

                                                    Chapter 11

ONE FOR THE MONEY, LLC                  Case No. 15-10188 (SCC)

                 Debtor.
---------------------------------------------------------X

## DECLARATION IN SUPPORT OF CONFIRMATION OF
## DEBTOR'S LIQUIDATING CHAPTER 11 PLAN

ANTHONY M. MARANO, under penalties of perjury, declares and says:

1. I am the Managing Member of One for the Money, LLC (the "Debtor"), and, as such, I am fully familiar with the facts and circumstances set forth herein. I submit this affidavit in support of confirmation of the Debtor's Liquidating Chapter 11 Plan dated May 27, 2015 (the "Plan" Docket No. 29),.[1]

---

[1] Capitalized terms herein shall have the meanings as set forth in the Plan.

1

**I.     Background**

2.      The Debtor filed a voluntary petition on January 28, 2015 under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.      On May 27, 2015, the Debtor, in connection with the Plan, filed its Disclosure Statement (the "Disclosure Statement", Docket No. 30). On June 1, 2015, the Court entered an order (the "Disclosure Statement Order", Docket No. 31) conditionally approving the Disclosure Statement and fixing the time for final approval of the Disclosure Statement, filing of acceptances or rejections of the Plan, scheduling a confirmation hearing and the deadline for delivering ballots and filing objections to the Plan.

4.      Solicitation packages were sent to all creditors and parties in interest, which included (i) the Disclosure Statement Order, containing all deadlines; (ii) the Disclosure Statement; (iii) the Plan; and (iv) Ballot with return addressed post-paid envelope.

**II.    The Plan**

5.      The Plan, as filed, provides for the following classes of claims and the following types of relief:

(a)     Three (3) Classes of Secured Claims, designated as Classes 1, 2, and 3, to be treated as follows:

> **Class 1 – Allowed Secured Claim of Sutherland Asset I, LLC:** Sutherland Asset I, LLC shall be paid in cash, from the Sale proceeds, on the Sale closing Date, the discounted amount of $4,113,195.32 together with per diem interest and other required fees from April 23, 2015 at the rate provided under the Option Extension Letter Agreement dated April 18, 2015. In exchange for such payments, the class 1 claimholder shall, in accordance with the DPA Extension Agreement, simultaneously assign all of its claims, liens, mortgages and security interest against, *inter alia,* the Debtor and the Property to 75, LLC at the Sale closing. Class 1 claims are impaired under the Plan and are entitled to vote to accept or reject the Plan.

2

**Class 2 – Allowed Secured claim of 75, LLC:** 75, LLC as assignee of Sutherland Asset I, LLC shall receive, in cash, from the Sale Proceeds, on the Sale Closing Date, the remaining net proceeds from the Sale after payment in full of (a) all unclassified claims, (b) all Allowed Administrative Expenses Claims, (c) all Allowed Claims of Professionals, (d) all Allowed Priority Claims, if any, (e) the Allowed Class 3 Secured claim in the amount of $1,250,000 and (f) the Post-Confirmation Reserve on the later of the Sale Closing Date or the Effective Date, in full and final satisfaction of all claims against the Debtor. Class 2 is anticipated to receive approximately $6,750,000 from the Sale Proceeds. The members of 75, LLC shall, in turn, each receive distribution hereunder in accordance with the 75, LLC Settlement Agreement. Class 2 claims are impaired under the Plan and are entitled to vote to accept or reject the Plan.

**Class 3 – Allowed Secured claim of Petros M. Beys:** Petros M. Beys shall be paid in the discounted amount of $1,250,000, in cash, from the Sale Proceeds, on the Sale closing Date, in full and final satisfaction of any and all claims against the Debtor, its members, officers, agents, representatives and assigns, including by limited to Anthony M. Marano, Anthony C. Marano, and Scott A. Marano. Class 3 claims are impaired under the plan and are entitled to vote to accept or reject the Plan.

(b)     Two (2) Classes of General Unsecured Claims, designated as Class 4 and 5 to be treated as follows:

**Class 4 – Allowed General Non-Insider Unsecured Claims: :** Holders of Allowed Class 4 Claims shall be paid in full, in cash, without interest, within 15 days of the later of the (a) Sale Closing Date, or (b) the Effective Date, in full and final satisfaction of all claims against the Debtor. The Debtor believes such claims do not exceed $50,000. Class 4 claims are impaired under the Plan and are entitled to vote to accept or reject the plan.

**Class 5 – Allowed General Insider Unsecured Claims:** Allowed General Insider Unsecured Claims shall not receive a distribution under the Plan. Class 5 claims total approximately $600,000. Class 5 claims are impaired under the Plan and are deemed to reject the Plan.

(c)     One (1) Class of Equity Interests, designated as Class 6, to be treated as follows:

**Class 6 – Interest Holders.** Holders of Allowed Class 6 Interests shall not receive any distribution under the Plan. Class 6 Interest holders are impaired under the Plan and are deemed to have rejected the Plan.

(d)     The Plan also provides for the payment in full, in Cash, of **Allowed Administrative Claims** including (1) ordinary course expenses, payment of which shall be tendered as they are incurred, (2) Allowed Administrative Professional Fees which shall be paid upon Allowance and from the Plan Distribution Fund (or to the extent necessary, the Post-Confirmation Date Reserve) Upon the later of (i) allowance by the Court, or (ii) the Sale Closing, and (3) the United States Trustee statutory fees arising under 28 U.S.C. §1930(a)(6) and 31 U.S.C. Section 3717 which shall be paid as they are incurred in the ordinary course.

All Administrative Professional Fees for services rendered in connection with this Chapter 11 Case and the Plan after the Confirmation Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be paid by the Debtors upon receipt of an invoice therefore, without the need for further Bankruptcy Court authorization or entry of a Final Order. The Debtor estimates the net unpaid Administrative Professional Fees through Confirmation are approximately $90,000, with an additional $35,000 estimated for Post-Confirmation services.

(e)     The Plan also provides for the payment of **Allowed Priority Tax Claims** pursuant to Section 507(a)(8) of the Bankruptcy Code in cash on the Effective Date or as soon as practical thereafter in full and final satisfaction of its claims against the Debtor. To the best of the Debtor's knowledge and belief, the priority tax creditors include, but may not be limited to, Claims of the City of New York for real estate taxes, water and sewer charges and violations or any kind.

(f)     The Plan will be funded with (i) the net proceeds from the sale of the Property, after the payment of all costs of closing, including but not necessarily limited to typical and

customary closing costs, and (ii) contain personal contributions from the members of the Debtor and certain members in accordance with the 75, LLC Settlement Agreement.

(g) The Plan also provides for the rejection of all unexpired Executory Contracts and Unexpired Leases not otherwise assumed and assigned under the Sale Agreement, as of the Effective Date. The Property shall be conveyed to the Purchaser free and clear of all such obligations, including any tenancies, any reluctant rejection damages claim must be filed with the Clerk of the Court and served upon counsel for the Debtor no later than twenty-five (25) days after notice of occurrence of the Confirmation Date.

**III.  Acceptance of the Plan**

6. The Disclosure Statement sets forth the standards necessary for confirmation and I have discussed those standards with counsel.

7. The Plan designates six (6) classes of Claims as Impaired: Class 1 (Allowed Secured Claims of Sutherland Asset I, LLC), Class 2 (Allowed Secured Claim of 75, LLC), Class 3 ( Allowed Secured Claim of Petros M. Beys), Class 4 (Allowed General Non-Insider Unsecured Claims), Class 5 (Allowed General Insider Unsecured Claims).

8. Class 1 returned one (1) timely ballot, totaling $12,648,808.56 voting in favor of the Plan. Class 2 returned one (1) timely ballot, totaling $8,000,000. Class 3 returned one (1) timely ballot, totaling $3,037,201.09, voting in favor of the Plan. Class 4 returned one (1) timely ballot, totaling $98,569.04, voting in favor of the Plan. No ballots have been returned voting against the Plan. As acceptances were received by more than one half in number and more than two thirds in amount of claims that voted, Class 1, 2, 3, and 4 have voted to accept the Plan.

9. Consequently, all classes of non-insider impaired creditors have voted to accept the Plan.

**IV.     The Plan Satisfies the Confirmation Requirements of
         Section 1129(a) of the Bankruptcy Code**

10.     I have been advised by counsel to the Debtor that Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of title 11. I have been further advised by counsel that, as set forth in detail below, the Plan satisfies each and every requirement of confirmation.

**A.  Section 1122(a) - Classification of Claims**

11.     Section 1122(a) of the Bankruptcy Code, which governs classification of claims, requires that all claims or interest within a particular class must be "substantially similar to the other claims or interests of such class" The Plan complies with this provision in that it provides for the following separate classes: (i) A Class for Priority Non-Tax Claims; (iii) A Class for General Unsecured Claims and (iv) A Class for the holders of Interests.

**B.  Section 1123(a) sets forth various provisions that must be satisfied in the Plan.**

12.     Section 1123(a)(1): Designation of Classes of Claims or Interests: Section 1123(a)(1) requires that a plan shall "designate, subject to section 1122 of this title, classes of claims, other than clams of a kind specified in Section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests." The Plan complies with this provision as Article II of the Plan designates the Classes of Claims and Interests.

13.     Section 1123(a)(2): Specification of Non-Impaired Classes of Claims or Interests: Section 1123(a)(2) requires that a plan shall "specify any class of claims or interests that is not impaired under the plan." There are no un-impaired classes of claims or interests under the Plan.

14.     Section 1123(a)(3): Specification of Treatment of Impaired Classes or Interests: Section 1123(a)(3) requires that a plan shall "specify the treatment of any class of claims or interests that is impaired under the Plan." The Plan complies with this provision as Article III of

6

the Plan provides for the Treatment of Claims under the Plan in so far as Article III, Section 3.2 through 3.7 provides for the treatment of the impaired Classes 1, 2, 3, 4, 5 and 6.

15. <u>Section 1123(a)(4): Equal Treatment for Each Claim or Interest of a Particular Class</u>. Section 1123(a)(4) requires that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." The Plan complies with this provision in that no Claim or Interest of any Class will receive treatment more or less favorable than the other Claims or Interests within that Class.

16. <u>Section 1123(a)(5): Plan Implementation</u>. Section 1123(a)(5) requires that a plan shall "provide adequate means for the plan's implementation……" Article IV of the Plan entitled <u>Means for Execution</u> provide a detailed description of the means for the Plan's implementation and execution. The Debtor has heretofore entered into the Sale Agreement, and closing thereon will generate sufficient funds to make all payments required under the Plan.

17. <u>Section 1123(a)(6): Prohibition on Issuance of Nonvoting Equity Securities.</u> Section 1123(a)(6) requires that a plan shall "provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of any corporation referred to in paragraph (5)(B) or (5)(C) of this subsection, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends." The Plan complies with this provision in that the Plan does not provide for the issuance of nonvoting equity securities.

18. <u>Section 1123(a)(7): Manner of Selection of Officers and Directors</u>: Section 1123(a)(7) requires that a plan shall "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." Article X of the Plan provides for the Debtor's post-Confirmation management.

19. <u>Section 1123(a)(8): Debtor Income Necessary For Execution of Plan</u>: Section 1123(a)(8) applies to individual debtors and is inapplicable to this case.

20. The Plan, therefore, complies with all of the provisions mandated by Section 1123(a) of the Bankruptcy Code.

**C. Section 1123(b) sets forth various provisions that, subject to subsection (a), may also be included in a Plan.**

21. <u>Section 1123(b)(1)</u> provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." Article II of the Plan provides for the designation of Classes of Claims and Article III of the Plan provides for the Treatment of those Classes of Claims. Classes 1, 2, 3, 4, 5 and 6 are impaired under the Plan.

22. <u>Section 1123(b)(2)</u> provides that a plan may "subject to section 365 of this title, provide for the assumption, rejection or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." Article V of the Plan entitled <u>Executory Contracts</u> provides that, the Debtor shall assume designated unexpired leases or executory contracts that had not previously been expressly assumed or rejected by the Debtor. Under the Sale Agreement, the Debtor has designated such Executory Contracts to be assumed and assigned to the Purchaser.

23.     Section 1123(b)(3) provides that a plan may "provide for the retention and enforcement by the debtor of any such claim or interest belonging to the debtor or to the estate." The Debtor does not believe such claims exist.

24.     Section 1123(b)(4) provides that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." Article IV of the Plan and specifically Section 4.2 details the Debtor's plans for liquidation of their assets and sale of the Property through the Sale Agreement which will provide the means to fund the Plan.

25.     Section 1123(b)(5) provides that a plan may "modify the rights of holders of claims or leave unaffected the rights of holders of any class of claims." The treatment of each Class of Claims is set forth in Article III of the Plan entitled Treatment of Claims and Classes Under the Plan.

26.     Section 1123(b)(6) provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this Title." The Debtor believes that the Plan does not contain any provision that is inconsistent with the applicable provisions of Title 11.

**D. Section 1129 – Requirements for Confirmation of a Plan**

27.     Section 1129(a)(1) provides that "the plan complies with the applicable provisions of this title." As set forth in this Declaration, the Plan complies with the applicable provisions of Sections 1122 and 1123 and therefore complies with Section 1129(a)(1).

28.     Section 1129(a)(2) provides that "the proponent of the plan complies with the applicable provisions of this title." The Debtor has timely mailed the Solicitation Packages to all

9

creditors and parties in interest. Accordingly, the proponents of the Plan have complied with Sections 1125, 1126 and 1129(a)(2).

29. Section 1129(a)(3) provides that "the plan has been proposed in good faith and not by any means forbidden by law." The Debtor, together with counsel, spent much time and effort formulating a plan acceptable to all creditors. The Debtor submits that the Plan has been proposed in good faith and not by any means forbidden by law in accordance with Section 1129(a)(3).

30. Section 1129(a)(4) provides that "any payment…for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." Article III, Section 3.1(b) of the Plan provides for the payment of Administrative Professional Fees only upon approval by the Bankruptcy Court after proper notice and hearing. The Plan also contemplates the payment of a broker's fee to Ozymandius Realty, an entity owned by me. I have agreed to reduce the commission set forth the Disclosure Statement from 6% to 2%. Ozymandius Realty was solely responsible for procuring the Purchaser and is permitted to receive such a brokerage commission upon sale of the Property under the Debtor's Operating Agreement.

31. Section 1129(a)(5) provides that "the proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve as a director or officer and that the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the debtor." Article X of the Plan provides for the corporate governance of the Debtor post-confirmation.

32. <u>Section 1129(a)(6)</u> provides that "any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change….". Section 1129(a)(6) is not applicable to this matter.

33. <u>Section 1129(a)(7)</u> provides that "with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has either accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value , as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date." Class 2 consisting of the Allowed Claims of General Unsecured Creditors returned 3 timely ballots, totaling $988,227.95 voting in favor of the Plan. No ballots were returned voting against the Plan.  As acceptances were received by more than one half in number and more than two thirds in amount of Class 2 claims that voted, all Impaired insider classes of creditors voted to accept the Plan. Class 5 Insider Claims and Class 6 Interests shall receive no distribution under the Plan which is justified by the liquidation value of the Debtor of $12,500,000, which is less than what is currently owed to Sutherland Asset I, LLC alone.

34. <u>Section 1129(a)(8)</u> provides that "with respect to each class of claims or interests, such class has accepted the plan or such class is not impaired under the plan." The Plan provides for six (6) Classes of Creditors and Interest holders. All classes are impaired under the Plan and all classes of impaired non-insider creditors have voted to accept the Plan.

35. <u>Section 1129(a)(9)</u> provides that holders of certain claims under Section 507 of the Bankruptcy Code receive distributions in a certain manner unless said class has agreed to a different treatment. The Plan provides for the payment of Allowed Administrative Claims, including United States Trustee statutory fees arising under 28 U.S.C. §1930(a)(6) and 31 U.S.C.

§ 3717, in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtors, and according to the terms and conditions of the respective contracts with respect to those Claims. The Plan also provides for the payment of Priority Tax Claims and Priority Non-Tax Claims, if any, the amount of their Allowed Claim in full, in cash on the Effective Date.

36. Section 1129(a)(10) provides that "at least one class of claims that is impaired under the plan has accepted the plan." Four classes of impaired claims under the Plan have voted to accept the Plan.

37. Section 1129(a)(11) provides that "Confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor, unless such liquidation or reorganization is proposed in the plan." As set forth in Article III, Section (E)(f) of the Disclosure Statement entitled Feasibility and "Best Interest" Tests, the Debtor projects that the sale of the Property in accordance with the Sale Agreement will likely occur thereby satisfying the requirement that the Plan be feasible to implement.

38. Section 1129(a)(12) provides for "all fees payable under section 1930 of title 28 have been paid or the plan provides for the payment of all such fees on the Effective Date of the Plan." Article III entitled Treatment of Claims Under the Plan provides for the payment of all United States Trustee Fees.

39. Sections 1129(a)(13)-(16) are inapplicable to this case.

40. The Debtor therefore respectfully submits that the Plan satisfies each of the requirements set forth in Section 1129(a) of the Bankruptcy Code and therefore request that the Court confirm the Plan under Section 1129(a).

## **CONCLUSION**

**WHEREFORE,** for the reasons set forth herein, Debtor respectfully requests that the Court enter an order confirming the Plan.

Dated: New York, New York
      July 6, 2015

                                              */s/ Anthony M. Marano*
                                              Anthony M. Marano